**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KEVIN P. FITZPATRICK, et al.,

        Plaintiffs,

        -against-

AMERICAN INTERNATIONAL GROUP, INC., AIG
GLOBAL REAL ESTATE INVESTMENT
CORPORATION,

        Defendants.

Case No.: 10-Civ-0142 (RMB) (MHD)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIMS AND IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Sean F. O'Shea
Michael E. Petrella
**O'SHEA PARTNERS LLP**
521 Fifth Avenue
New York, NY 10175
Tele: (212) 682-4426
Fax: (212) 682-4437
Email: mpetrella@osheapartners.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

LEGAL ARGUMENT ......................................................................................... 3

   I.   DEFENDANTS' COUNTERCLAIMS SHOULDBE DISMISSED IN THEIR
ENTIRETY. ...................................................................................................... 3

     A.   Defendants' Breach of Contract, Breach of Fiduciary Duty, and Trade Secret Claims
Must Be Dismissed. ...................................................................................... 4

     B.   Defendants Fail to State Claims Under the CFAA. ...................................... 8

     C.   Defendants' Declaratory Judgment Counts Fail to State Claims Upon Which Relief Can
Be Granted. ................................................................................................. 11

     D.   Defendants Have Failed to State a Claim for an Injunction. ...................... 11

     E.   Defendants' Counterclaim for Disgorgement Fails to State a Claim upon which Relief
Can Be Granted. .......................................................................................... 11

   II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ............................... 12

     A.   Section 8.9 of the Tribeca SA Does Not Bar Plaintiffs' Claims. ................... 12

     B.   Plaintiffs Have Standing to Assert The Derivative Claims. .......................... 17

     C.   The Tribeca "Integration Clause" Does Not Affect Plaintiffs' Claims Pursuant To The
2001 Contract. ............................................................................................ 19

     D.   Cayman Islands Exempted Limited Partnership Law Does Not Prohibit Derivative
Actions.................................................................................................................
.................................................................................................................... 19

     E.   Plaintiffs Have Satisfied the Pleading Requirements for Their Derivative Claims. ...... 20

   III.   ALTERNATIVELY, PLAINTIFFS ARE ENTITLED TO AMEND THE
COMPLAINT ................................................................................................... 22

CONCLUSION ................................................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amusement Industry, Inc. v. Stern*, 2010 WL 445900 (S.D.N.Y. Mar. 1, 2010) .......................... 11

*Appel v. Fischbach Corp., Inc.*, 1998 WL 470497 (E.D.N.Y. Aug. 10, 1998).................... 4, 7, 12

*Arista Records LLC v. Usenet.com, Inc.*, 2008 WL 4974823  (S.D.N.Y. Nov. 24, 2008) .......... 11

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................................... 3

*B & B Microscopes v. Armogida*, 532 F. Supp. 2d 744 (W.D. Pa. 2007)...................................... 9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 3

*Bigda v. Fischbach Corp.*, 898 F. Supp. 1004 (S.D.N.Y. 1995) ........................................... 4, 5, 6

*Black & Decker (US), Inc. v. Smith*, 568 F. Supp. 2d 929 (W.D. Tenn. 2008) ............................ 9

*Board of Managers of 195 Hudson Street Condominium v. Jeffrey M. Brown Associates, Inc.*,
   652 F. Supp. 2d 463 (S.D.N.Y. 2009) ...................................................................................... 3

*Brett Senior & Assocs., P.C. v. Fitzgerald*, 2007 WL 2043377 (E.D. Pa. July 13, 2007)............. 9

*Calabria v. Associated Hospital Serv.*, 459 F. Supp. 946 (S.D.N.Y. 1978) .................................. 6

*Cephalon, Inc. v. John Hopkins University*, Civ. No. 3505-VCP, 2009 WL 4896227 (Del. Ch.
   Dec. 18, 2009) ........................................................................................................................ 16

*Chas S. Winner, Inc. v. Polistina*, 2007 WL 1652292 (D.N.J. June 4, 2007)............................. 10

*Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378 (S.D.N.Y.
   2005).......................................................................................................................................... 10

*Condux Intern., Inc. v. Haugum*, 2008 WL 5244818 (D. Minn. Dec. 15, 2008)........................... 9

*Counsel Financial Services, LLC v. Melkerson Law, P.C.*, 602 F. Supp. 2d (W.D.N.Y. 2009) .... 6

*Crandon v. U.S.*, 494 U.S. 152 (1990) ......................................................................................... 8

*Daly v. Kochanowicz*, 884 N.Y.S.2d 144 (2d Dep't 2009)......................................................... 4, 6

*Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322 (N.D. Ga. 2007).......................... 9

*Diamond v. T. Rowe Price Associates, Inc.* 852 F. Supp. 372 (D. Md. 1994)...................... 4, 6, 7

*E.W. Smith Publ'g Co., Inc. v. Town of New Windsor*, 386 F. Supp. 2d 374 (S.D.N.Y. 2005).... 15

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009)............................ 11

*Feiner Family Trust v. VBI Corp.*, No. 07-CV-1914 (RPP), 2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007)............................................................................................................................ 20

*Gotham v. Hallwood Realty Partners L.P.*, 1998 WL 832631 (Del. Ch. Nov. 10, 1998) ...... 20, 22

*Grumman Olson Industries, Inc.*, 329 B.R. 411 (S.D.N.Y. 2005).................................................. 6

*HCFA Associates Corp. v. Grosman*, 960 F. Supp. 581 (E.D.N.Y. 1997) .................................... 7

*In re Ambac Fin. Group, Inc. Derivative Litig.*, 257 F.R.D. 390 (S.D.N.Y. 2009)...................... 15

*In re America Online, Inc. Version 5.0 Software Litig.,* 168 F. Supp. 2d 1359 (S.D. Fla. 2001)... 9

*In re Cencom Cable Income Partners, Inc.*, 2000 WL 130629 (Del. Ch. Ct. Jan. 27, 2000) . 14, 15

*Integrated Cash Management Services, Inc. v. Digital Transactions Inc.*, 920 F.2d 171 (2d Cir. 1990)........................................................................................................................................ 4

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda,* 390 F. Supp. 2d 479 (D. Md. 2005)........................................................................................................................................ 9

*Jerulee Co. v. Sanchez*, 841 N.Y.S.2d 242 (1st Dep't 2007)........................................................ 17

*Jet One Group, Inc. v. Halcyon Jet Holdings, Inc.*, 2009 WL 2524864 (E.D.N.Y. Aug. 14, 2009) ............................................................................................................................................. 8, 9

*Kaplan v. Bennett*, 465 F. Supp. 555 (S.D.N.Y. 1979)................................................................ 15

*L-3 Communications Westwood Corp. v. Robicharux*, 2007 WL 756528 (E.D. La. Mar. 8, 2007) .............................................................................................................................................. 10

*Leonard F. v. Disc. Bank of N.Y.*, 199 F.3d 99 (2d Cir. 1999) ...................................................... 3

*Lexington 360 Associates v. First Union Nat. Bank of North Carolina*, 651 N.Y.S.2d 490 (1st Dep't 1996) ............................................................................................................................. 6

*Lockheed Martin Corp. v. Speed*, 2006 WL 2683058 (M.D. Fla. Aug. 1, 2006) .......................... 9

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009)..................................................... 9

*Metito (Overseas) Ltd. v. General Elec. Co.*, 2009 WL 399221 (S.D.N.Y. Feb. 18, 2009).......... 5

*Meyer Ventures, Inc. v. Barnak*, 1990 WL 172648 (Del. Ch. 1990) ........................................... 12

*Moulton v. VC3*, 2000 WL 33319101 (N.D. Ga. Nov. 7, 2000)................................................... 10

*Mourning v. Family Publications Service Inc.*, 411 U.S. 356 (1977)............................................. 8

*Nexans S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004) .................................. 8, 10

*Northfield Ins. Co. v. Derma Clinic, Inc.*, 440 F.3d 86 (2d Cir. 2006).......................................... 17

*Nycal Corp. v. Inoco PLC*, 166 F.3d 1201, 1998 WL 870192 (2d Cir. Dec. 9, 1998) ................. 16

*Oliver Schools, Inc. v. Foley*, 930 F.2d 248 (2d Cir. 1991)........................................................... 22

*Payment Alliance Intern., Inc. v. Ferreira*, 530 F. Supp. 2d 477 (S.D.N.Y. 2007)....................... 5

*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) .............................................................................. 8

*Ronzani v. Sanofi S.A.*, 899 F.2d 195 (2d Cir. 1990).................................................................... 22

*Ross v. Bernhard*, 396 U.S. 531 (1970) ......................................................................................... 15

*Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125 (W.D.N.Y. 2000) ......................................................... 7

*SEC v. Cavanagh*, 445 F.3d 105 (2d Cir. 2006) ........................................................................... 11

*SecureInfo Corp. v. Telos Corp.,* 387 F. Supp. 2d 593 (E.D. Va. 2005) ........................................ 9

*Shamrock Foods Co. v. Gast,* 535 F. Supp. 2d 962 (D. Ariz. 2008) ............................................... 9

*Sheldon v. Kanal*, 2009 WL 3233093, (E.D.N.Y. Sept. 30, 2009).................................................. 6

*Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231 (S.D.N.Y. 2006)............................. 11

*Southwest Airlines Co. v. Harris*, 2007 WL 3285616 (N.D. Tex. Nov. 2, 2007)......................... 10

*Teachers Ins. and Annuity Assn. of America v. Criimi May Services Limited Partnership*, 2010 WL 395190 (S.D.N.Y. Feb. 3, 2010) ....................................................................................... 11

*Telequest, Intern. Corp. v. Dedicated Business Systems, Inc.*, 2009 WL 3234226 (D.N.J. Sept. 30, 2009)................................................................................................................................... 10

*Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg*, 604 N.Y.S.2d 947 (1st Dep't 1993)............. 6

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250 (S.D.N.Y. 2005)....................... 12

*U.S. Fidelity & Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34 (2d Cir. 2004) ................. 7

*United States v. Bradford*, 433 F. Supp. 2d 1001 (N.D. Iowa 2006)........................................... 17

**Statutes**

18 U.S.C. § 1030....................................................................................................................... 8

1986 U.S.C.C.A.N ...................................................................................................................... 9

6 Del. C. § 17-1001 ................................................................................................ 18, 20

6 Del. C. § 18-1001 ................................................................................................ 18, 20

Exempted Limited Partnership (Amendment Law), G10/2009 § 5 (Cayman Islands) ................ 20

Exempted Limited Partnership Law (2007 Revision), G14/2007 § 1 (Cayman Islands) ............ 20

S. Rep. No. 99-432 .................................................................................................... 9

**Rules**

*Fed. R. Civ. P.* 12(b)(6) ............................................................................................ 3

**Treatises**

William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5908 .................................... 15

# PRELIMINARY STATEMENT[1]

Plaintiffs respectfully submit this Memorandum of Law in support of their motion to dismiss the First Amended Counterclaims and in opposition to Defendants' partial motion to dismiss the First Amended Complaint.

**Plaintiffs' Motion to Dismiss.** Defendants have failed and refused to pay millions of dollars in Profits Interests earned by Mr. Fitzpatrick pursuant to the clear and unambiguous terms of the applicable contracts. Beginning in 2008, Defendants flagrantly and unabashedly breached their obligations by trumping up gauzy excuses to renege on their clear contractual obligations. The counterclaims are precisely that – a manufactured pretext designed to shirk a clear contractual debt.

Defendants' counterclaims initially fail because Defendants have not alleged (and cannot allege) that Mr. Fitzpatrick misused or disclosed any proprietary information to a third-party. For that reason, Defendants also cannot allege damages to support their claims. The Computer Fraud and Abuse Act ("CFAA") claim is fatally deficient because there is no allegation that Mr. Fitzpatrick hacked into a computer system to which he was not permitted access, nor is there any allegation that Defendants suffered a statutorily-cognizable loss. The declaratory judgment claim impermissibly seeks a judicial blessing of the validity of Defendants' defenses to Plaintiffs' offensive claims, and injunctive relief is unavailable because (*inter alia*) Defendants cannot demonstrate a likelihood of success on the merits. Finally, Defendants' "disgorgement" claim should be dismissed because no such cause of action exists and, as a matter of law, the facts pleaded by Defendants do not constitute a material breach of fiduciary duty, and do not support a claim for forfeiture of sums paid or due to Mr. Fitzpatrick.

**Defendants' Partial Motion to Dismiss.** Defendants' motion is predicated on crabbed (and hopelessly faulty) readings of various provisions of the Tribeca Standard Agreement

---

[1]     As used herein, "AIG MOL" shall refer to the Memorandum of Law in Support of Defendants' Partial Motion to Dismiss Plaintiffs' First Amended Complaint dated March 29, 2010.

("Tribeca SA"). These desperate arguments are of a piece with Defendants' ongoing efforts to dredge up any excuse, no matter how tepid or anemic, to justify their brazen failure to honor Mr. Fitzpatrick's clear contractual right to millions of dollars in unpaid Profits Interests. The arguments are so weak, in fact, that they did not even occur to Defendants themselves until *after* they had submitted their letter requesting a pre-motion conference pursuant to this Court's Individual Practice 2.A, and indeed *after* the pre-motion conference itself.[2]

In any event, as explained in detail below, Defendants' motion fails for numerous reasons, including but not limited to the following:

- This action does not seek to recover Profits Interests for anyone other than Mr. Fitzpatrick.

- Plaintiffs' status as "inactive members" of the Tribeca entities does not defeat their standing with respect to the derivative claims.

- The integration clause in the Tribeca SA merely means (at best) that the 2001 Contract governs Profits Interests not covered by Tribeca agreements, and the Tribeca agreements govern the Profits Interests within their purview.

- The Tribeca entities formed under Cayman Islands law are exempted limited partnerships, and Cayman statutes clearly permit such entities to bring derivative actions.

- The First Amended Complaint clearly pleads in exhaustive detail the futility of demanding that Defendants pursue this action.

For the foregoing reasons, Plaintiffs' motion to dismiss the First Amended Counterclaims should be dismissed and Defendants' partial motion to dismiss the First Amended Complaint should be denied.

---

[2]      As explained in detail below and in the accompanying Petrella Declaration, because Defendants have based their motion to dismiss on theories entirely different from those they presented to the Court pursuant to Individual Practice 2.A, Plaintiffs are entitled to amend their pleading in the unlikely event that the Court does not reject Defendants' arguments out of hand.

## FACTUAL BACKGROUND

The facts necessary to decide the parties' competing motions to dismiss pursuant to *Fed. R. Civ. P.* 12(b)(6) are set forth in the First Amended Complaint ("FAC") (attached as Exhibit A to the Declaration of Keara M. Gordon dated March 29, 2010 ("Gordon Dec.")); the Declaration of Michael E. Petrella submitted herewith dated May 4, 2010 ("Petrella Dec."); Defendants' Answer dated March 29, 2010 (Petrella Dec., Ex. F); and Defendants' First Amended Counterclaim ("FACC") dated March 8, 2010 (Petrella Dec., Ex. E).

## LEGAL ARGUMENT

## I.   DEFENDANTS' COUNTERCLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY.

To survive a Rule 12(b)(6) challenge, a pleading must have "facial plausibility." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* A pleading that contains allegations of facts that are "merely consistent with" unlawful conduct "stops short of the line between possibility and plausibility of 'entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). A party must plead "more than labels and conclusions" and "a formulaic recitation of a cause of action's elements will not do."  *Id.* at 555. In deciding a Rule 12(b)(6) motion, review is limited to "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Board of Managers of 195 Hudson Street Condominium v. Jeffrey M. Brown Associates, Inc.*, 652 F. Supp. 2d 463, 471 (S.D.N.Y. 2009) (quoting *Leonard F. v. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)). Where the pleadings "do not permit the court to infer more than the mere possibility of misconduct," the claims must be dismissed. *Ashcroft*, 129 S. Ct. at 1950.

**A.      Defendants' Breach of Contract, Breach of Fiduciary Duty, and Trade Secret Claims Must Be Dismissed.**

   *1.      Defendants Fail to Allege Improper Use or Disclosure of Confidential Information.*

Improper use or disclosure of confidential information is an essential element of Defendants' claims for breach of contract, breach of fiduciary duty, and theft of trade secrets. (FAC, Ex. A, Section 7(a)) providing that Mr. Fitzpatrick "agree[s] to refrain from ***using*** . . . Confidential Information except in connection with [his] employment and in [his] activities on behalf of any Funds") (emphasis added);[3] *Integrated Cash Management Services, Inc. v. Digital Transactions Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (to state claim for misappropriation of trade secrets, claimant must allege "defendant is ***using*** that trade secret in breach of agreement confidence, duty or as a result of discovery by improper means.") (emphasis added); *Daly v. Kochanowicz*, 884 N.Y.S.2d 144, 156 (2d Dep't 2009) (to state claim for breach of fiduciary duty, party must allege "misconduct by the defendant"); *Bigda v. Fischbach Corp.,* 898 F. Supp. 1004, 1017 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 108 (2d Cir. 1996) (taking company documents home did not constitute disloyalty); *Appel v. Fischbach Corp., Inc.*, 1998 WL 470497, *7 (E.D.N.Y. Aug. 10, 1998), *aff'd*, 189 F.3d 460 (2d Cir. 1999) (taking and retaining documents for purpose of anticipated litigation did not constitute material breach of employee's fiduciary duty); *Diamond v. T. Rowe Price Associates, Inc.* 852 F. Supp. 372, 408-12 (D. Md. 1994) (dismissing breach of fiduciary duty claim where former employee retained over one hundred company files at her home for nearly one year following her termination).

---

[3]      Defendants incorrectly state that Section 8.12 of the Tribeca agreements is the relevant confidentiality provision. Section 8.12 provides in 8.12(e) (or sometimes 8.12(f)) of the various Tribeca Agreements that "to the extent that (i) a Management Member is, immediately prior to his/her termination of employment with AIGGRE or any of its Affiliates, a party with AIGGRE or any of its Affiliates to an effective employment agreement (dated and with effect prior to December 31, 2003), and (ii) the provisions of such effective employment agreement conflict with any of the provisions of this Section 8.12, (iii) then, the conflicting provisions of this Section 8.12 shall be inapplicable to such Management Member and the provisions of such effective employment agreement shall be applied instead."

Here, Defendants have failed to allege that Mr. Fitzpatrick improperly used or disclosed any confidential information to any third parties. Notably, Defendants refer only to "potential" uses that it claims Mr. Fitzpatrick could have for the documents; they do not allege that Mr. Fitzpatrick *actually made improper use* of the documents. See First Amended Counterclaim ("FACC"), ¶¶ 5, 97-98.[4]  Moreover, Defendants' speculative allegations that Mr. Fitzpatrick took copies of documents home intending to use them for non-work related purposes (*see id.*) fail to state a claim for any breach of duty. *See Bigda*, 898 F. Supp. at 1017 ("Mere thoughts, without action, cannot constitute a breach of a duty, and employees' pursuit of their contract rights cannot constitute disloyalty.").

Defendants merely allege that Mr. Fitzpatrick, while employed as President of AIGGRE and serving as general partner or managing member of the Tribecas (through the KPF Management Companies, the business address for which was Mr. Fitzpatrick's home address) possessed copies of documents pertaining to AIGGRE and the Tribecas at his home.[5]  The confidentiality provisions do not prohibit Mr. Fitzpatrick from working from home or from making copies of documents for review outside his New York office. Defendants also admit that Mr. Fitzpatrick has confirmed that he has not competed with Defendants since the termination of his employment and Defendants do not plead any facts that suggest otherwise. (FACC, ¶ 5, n. 1.) (Notably, Defendants have not attempted to plead a claim based on a violation of a non-compete

---

[4]      To the extent that Defendants' trade secret claim is based on "inevitable disclosure" rather than actual use or disclosure of trade secrets, their claim must fail. The doctrine of "inevitable disclosure" has only been used by New York courts to analyze requests for *preliminary injunctions* where employees subject to restrictive covenants have left for competitors. *See, e.g., Payment Alliance Intern., Inc. v. Ferreira*, 530 F. Supp. 2d 477, 480-82 (S.D.N.Y. 2007). The doctrine of inevitable disclosure cannot be relied upon to state a claim for misappropriation of trade secrets. *See Metito (Overseas) Ltd. v. General Elec. Co.*, 2009 WL 399221, *11 (S.D.N.Y. Feb. 18, 2009) (declining to extend doctrine: "Plaintiff cites no cases – nor has independent research yielded any – in which the risk of inevitable disclosure has been held sufficient to raise a triable issue of fact so as to defeat summary judgment.").

[5]      Additionally, Defendants fail to identify a single trade secret that they believe Mr. Fitzpatrick continues to possess. Defendants merely allege that they believe Mr. Fitzpatrick continues to possess some of their documents, without alleging facts that the alleged documents constitute trade secrets.  (FACC, ¶¶ 95-100.)

covenant.) In short, a mere allegation that Mr. Fitzpatrick possessed or possesses confidential documents, without more, does not state a claim for relief on any theory. *See Bigda*, 898 F. Supp. at 1017 (granting motion to dismiss counterclaim for breach of loyalty where employer failed to show that employee took confidential documents home for non-work related purposes); *Diamond*, 852 F. Supp. at 408-12 (dismissing claims against employee for breach of fiduciary duty, replevin, trespass, conversion, and trade secret misappropriation where employee possessed documents within scope of legitimate business duties).

2.     *Defendants Fail to Allege Damages.*

Damages are an essential element of the breach of contract and fiduciary duty claims. *See Calabria v. Associated Hospital Serv.*, 459 F. Supp. 946, 949 (S.D.N.Y. 1978) (breach of contract), *aff'd*, 610 F.2d 806 (2d Cir. 1979); *Daly v. Kochanowicz*, 884 N.Y.S.2d 144, 156 (2d Dep't 2009) (fiduciary duty).

In the instant case, Defendants fail to plead "allegations from which damages attributable to defendant's conduct might be reasonably inferred." *In re Grumman Olson Industries, Inc.*, 329 B.R. 411, 431 (S.D.N.Y. 2005) (quoting *Tenzer, Greenblatt, Fallon & Kaplan v. Ellenberg*, 604 N.Y.S.2d 947, 948 (1st Dep't 1993)). Defendants simply fail to allege improper use or disclosure of protectable information, and merely make conclusory statements that they have suffered damages. (FACC, ¶¶ 96-100.) *See, e.g., Counsel Financial Services, LLC v. Melkerson Law, P.C.*, 602 F. Supp. 2d 448 (W.D.N.Y. 2009) (dismissing breach of contract claim where parties failed to allege actual damages resulting from alleged breach); *Lexington 360 Associates v. First Union Nat. Bank of North Carolina*, 651 N.Y.S.2d 490, 494 (1st Dep't 1996) (dismissing breach of contract claim where damages allegations were "wholly speculative"); *Sheldon v. Kanal*, 2009 WL 3233093, *10 (E.D.N.Y. Sept. 30, 2009) (dismissing breach of fiduciary duty claim where plaintiffs failed to allege any facts and "simply set forth conclusory allegations – as to how [defendants'] alleged fiduciary breach caused them lost profits.").

Mere allegations that Mr. Fitzpatrick has retained documents (FACC, ¶¶ 69-70) do not successfully plead damages. *See, e.g., Diamond*, 852 F. Supp. at 378-79 (dismissing claims against employee where employer failed to allege actual damages arising from temporary absence of files). To the extent that Defendants plead damages arising from "Counter-Plaintiffs' attorneys' fees in the prosecution of this claim," (FACC, ¶ 76), Defendants again fail to state a claim. *See U.S. Fidelity & Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (under American Rule, attorneys' fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."); *HCFA Associates Corp. v. Grosman*, 960 F. Supp. 581, 587-88 (E.D.N.Y. 1997) ("in general a litigant may not rely on attorneys' fees or expenses [as damages] . . . [and] any alleged fees or costs, or other unspecified 'internal and external expenses' are insufficient to allege an injury."); *Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 129-130 (W.D.N.Y. 2000) (attorney's fees and expenses incident to litigation not recoverable as damages on contract theory). In addition, Defendants' claim for "the cost of their investigation" (FACC, ¶ 76), where Defendants have alleged no other damages and can allege no reasonable basis for their spurious investigation, is transparently a claim for litigation and anticipated litigation expenses.

Finally, to the extent that Defendants' breach of fiduciary counterclaim seeks the return of any monies paid to Mr. Fitzpatrick while employed by AIG, the counterclaim should be dismissed as a matter of law because AIG has suffered no actual harm, and therefore cannot allege a material breach of fiduciary duty. *See Appel v. Fischbach Corp., Inc.*, 1998 WL 470497, *7 (E.D.N.Y. Aug. 10, 1998) (rejecting claim for disgorgement where employer merely demonstrated that employee took documents for use in potential future litigation against employer: "while it may have been inappropriate for [the employee] to take [the employer's] documents and not return them, such action did not constitute a material breach of his fiduciary duty. Since . . . [employer] did not suffer any damages or harm as a result thereof, there is no justification for forfeiture of any of the salary [employee] received."), *aff'd*, 189 F.3d 460 (2d Cir. 1999).

**B.      Defendants Fail to State Claims Under the CFAA.**

Defendants allege that Mr. Fitzpatrick violated Sections 1030(a)(2)(C) and 1030(a)(4) of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Defendants fail to allege two elements required by these provisions: (1) access with "without authorization" or "exceeding authorized access;" and (2) "damage" or "loss" as defined by the CFAA.

> 1.    *Defendants Fail to Allege Unauthorized Access or Access Exceeding Authorization.*

The CFAA subsections upon which Defendants rely may be invoked only where a person accesses a computer "without authorization" or "exceed[ing] authorized access."  18 U.S.C. §§ 1030(a)(2)(c), (a)(4). Statutes must be interpreted according to their "plain and unambiguous meaning."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997). The CFAA should be construed narrowly. *See Mourning v. Family Publications Service Inc.*, 411 U.S. 356, 375 (1977); *see also Nexans S.A. v. Sark-USA, Inc.*, 319 F. Supp. 2d 468 (S.D.N.Y. 2004), *aff'd*, 166 Fed. Appx. 559 (2d Cir. Feb. 13, 2006) (adopting narrow interpretation of "damage" and "loss" provisions of the CFAA). To the extent that any terms in the CFAA are ambiguous, the rule of lenity must be applied. *See Crandon v. U.S.*, 494 U.S. 152, 158 (1990) (applying rule of lenity to interpret a criminal statute invoked in civil action).

The plain language of the CFAA prohibits improper "access," not "misuse" or "misappropriation," and the statute "strongly indicates that ***Congress' intent was to prohibit the act of accessing a computer without authorization – not misusing data that one had a lawful right to access***." *Jet One Group*, *Inc. v. Halycon Jet Holdings, Inc.*, 2009 WL 2524864, *6 (E.D.N.Y. Aug. 14, 2009) (granting motion to dismiss CFAA claim where plaintiff alleged that defendant employee improperly provided competitor with confidential and proprietary information to which defendant had access in ordinary course of business) (emphasis added).

Defendants do not allege that Mr. Fitzpatrick accessed computer systems or documents that he did not have permission to access – indeed, Defendants admit that, as President of AIGGRE, "Mr. Fitzpatrick had one of the highest levels of access to AIG's and AIGGRE's

8

confidential, trade secret, and proprietary information." (FACC, ¶ 96.) Defendants merely allege that Mr. Fitzpatrick made copies or print-outs of documents to which he had access in the ordinary course of business. As such, Defendants fail to state any claim under the CFAA.[6]

Moreover, Defendants' ham-handed attempts to stretch the CFAA to apply to state law trade secret or misappropriation claims (FACC, ¶¶ 87-94) fail. *See Jet One Group,* 2009 WL 2524864, at *6 ("It is simply not appropriate to 'expand' the CFAA in a manner not consistent with the statute's plain meaning, and, in so doing, transform what has always been a common law civil tort (*i.e.*, misappropriation of confidential information) into a federal criminal offense."). For the foregoing reasons, then, the Defendants have failed to allege a valid claim under the CFAA, and that claim should be dismissed.[7]

---

[6]    *See, e.g., LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (employee did not access computer "without authorization" or "exceed authorized access" under CFAA by emailing company documents to himself and to his wife while still employed); *Brett Senior & Assocs., P.C. v. Fitzgerald*, 2007 WL 2043377, *3-4 (E.D. Pa. July 13, 2007) ("Because there is no allegation that [the employee] lacked authority to view any information in [the employer's] computer system, the CFAA claim fails.") *See also Black & Decker (US), Inc. v. Smith,* 568 F. Supp. 2d 929, 933 (W.D. Tenn. 2008); *Shamrock Foods Co. v. Gast,* 535 F. Supp. 2d 962, 964 (D. Ariz. 2008); *Diamond Power Int'l, Inc. v. Davidson,* 540 F. Supp. 2d 1322, 1341-43 (N.D. Ga. 2007); *B & B Microscopes v. Armogida,* 532 F. Supp. 2d 744, 758 (W.D. Pa. 2007); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda,* 390 F. Supp. 2d 479, 498-99 (D. Md. 2005); *SecureInfo Corp. v. Telos Corp.,* 387 F. Supp. 2d 593, 608-10 (E.D. Va. 2005); *In re America Online, Inc. Version 5.0 Software Litig.,* 168 F. Supp. 2d 1359, 1370-71 (S.D. Fla. 2001).

[7]    Some courts (but not the Second Circuit) have held that an employee may be deemed to have accessed computers "without authorization" or "exceed[ed] authorized access" by accessing confidential information that he has permission to access, and then using that information in violation of his fiduciary or contractual duties. These non-binding decisions, however, are directly contradicted by the legislative history of the CFAA. *See* S. Rep. No. 99-432, at 21, 1986 U.S.C.C.A.N. at 2479, 2494-95 (CFAA was amended in 1986 to "***eliminate coverage for authorized access that aims at 'purposes to which such authorization does not extend***'" and to eliminate "one of the murkier grounds of liability"). They have also been repeatedly rejected as unpersuasive. *See Lockheed Martin Corp. v. Speed,* 2006 WL 2683058, at *5-7 (M.D. Fla. Aug. 1, 2006) (considering and rejecting such cases); *see also Condux Intern., Inc. v. Haugum*, 2008 WL 5244818, at *5, n.3-4 (D. Minn. Dec. 15, 2008) (same).

2. *Defendants Fail to Allege "Damage" and "Loss" as Defined by the CFAA.*

The CFAA only recognizes "losses" that "result from damage to, or the inoperability of, the accessed computer system." *Civic Center Motors, Ltd. v. Mason Street Import Cars, Ltd.*, 387 F. Supp. 2d 378, 381 (S.D.N.Y. 2005). "Loss" under the CFAA "has consistently meant a cost of investigating or remedying *damage to a computer, or a cost incurred because the computer's service was interrupted.*" *Nexans, supra,* 319 F. Supp. 2d at 475 (emphasis added). Defendants do not allege that any data, programs, systems, or information were impaired as a result of Mr. Fitzpatrick's conduct. Nor do Defendants allege that Mr. Fitzpatrick engaged in the type of "hacking" behavior that the CFAA was intended to police. Rather, their claimed expenses are merely unrecoverable expenses incurred in anticipation of litigation over Mr. Fitzpatrick's contract claims. (FACC, ¶ 92.) Indeed, district courts in various jurisdictions have concluded that the cost of hiring computer forensic specialists, in the absence of damage to a claimant's computer, does not constitute "loss" under the CFAA.[8]  Based on the foregoing, Defendants have failed to allege "damage" or "loss" under the CFAA and their claims must be dismissed.

---

[8]     *See, e.g., Telequest, Intern. Corp. v. Dedicated Business Systems, Inc.*, 2009 WL 3234226, *2 (D.N.J. Sept. 30, 2009) (granting motion to dismiss CFAA claim; cost of hiring forensics specialist to determine whether defendant's personal computer contained plaintiff's customer database is not loss under CFAA); *Southwest Airlines Co. v. Harris*, 2007 WL 3285616, *4 (N.D. Tex. Nov. 2, 2007) (granting motion to dismiss CFAA claim; no loss alleged under CFAA despite Plaintiff's claim that its employees had "investigated the alleged misuse" of its computer system); *Chas S. Winner, Inc. v. Polistina*, 2007 WL 1652292, *4-5 (D.N.J. June 4, 2007) (granting motion to dismiss for lack of subject matter jurisdiction) ("We find nothing in the structure or language of the statute to suggest that Congress intended to create a private cause of action against employees whose crime, if you will, merely involved the use of ordinary e-mail in a manner disloyal to their employer and in breach of their employment contract."); *L-3 Communications Westwood Corp. v. Robicharux*, 2007 WL 756528, *1, 4 (E.D. La. Mar. 8, 2007) (denying preliminary injunction; no cognizable loss where plaintiff had hired computer forensics firm to determine whether defendants had transmitted or copied documents from plaintiff's computers); *Moulton v. VC3*, 2000 WL 33319101, *6 (N.D. Ga. Nov. 7, 2000) (no "loss" where party alleged that it incurred expenses in investigating conduct where there was no structural damage to the party's computer network).

**C.      Defendants' Declaratory Judgment Counts Fail to State Claims Upon Which Relief Can Be Granted.**

Defendants' declaratory judgment claims (Counts Five and Seven) merely seek a declaration that certain of their defenses to Plaintiffs' affirmative claims are valid. As such, Defendants' declaratory judgment claims "seek[] resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006) (dismissing duplicative declaratory judgment claim). Accordingly, Defendants' invocation of the declaratory judgment procedure is unnecessary and improper. *See Amusement Industry, Inc. v. Stern*, 2010 WL 445900, *8 (S.D.N.Y. Mar. 1, 2010) (dismissing third party plaintiff's claim where issue would be resolved in underlying litigation); *Arista Records LLC v. Usenet.com, Inc.*, 2008 WL 4974823, *3, 5 (S.D.N.Y. Nov. 24, 2008) (dismissing counterclaims for declaratory judgment where counterclaims were merely "mirror images" of the complaint).

**D.      Defendants Have Failed to State a Claim for an Injunction.**

As set forth in Parts III.A and III.B above, Defendants cannot establish a likelihood of success on the merits of their claims.  Moreover, given Defendants' failure to allege any actual misuse or disclosure of its documents, they have failed to allege irreparable harm. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009) (finding no irreparable harm where plaintiff had not alleged that defendant had unlawfully disseminated or disclosed trade secrets). Therefore, for those reasons alone, the claim for an injunction fails.

**E.      Defendants' Counterclaim for Disgorgement Fails to State a Claim upon which Relief Can Be Granted.**

Defendants' Eighth Counterclaim for "Disgorgement" fails because "[d]isgorgement is merely an equitable remedy rather than a cause of action." *Teachers Ins. and Annuity Assn. of America v. Criimi May Services Limited Partnership*, 2010 WL 395190, * 8, n.60 (S.D.N.Y. Feb. 3, 2010) (citing *SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006)). In addition, neither New

York nor Delaware law recognizes disgorgement as a contract remedy.[9]   Finally, as noted in Point I.A, *supra*, Defendants have failed to allege any actual misuse or disclosure of confidential information, and have failed to allege cognizable damages resulting therefrom. Consequently, any purported breach of duty by Mr. Fitzpatrick is not material, and cannot support a claim for disgorgement. *See Appel*, *supra*, 1998 WL 470497, at *7 (taking and retaining documents for purpose of anticipated litigation did not constitute material breach of employee's fiduciary duty and therefore could not support demand for forfeiture of employee's compensation).

## II.     DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.

### A.     Section 8.9 of the Tribeca SA Does Not Bar Plaintiffs' Claims.

Defendants' argument based on Section 8.9 of the Tribeca SA (AIG MOL, at 9-10) fails for the simple reason that this action does not seek to recover Profits Interests for any Tribeca members other than the Fitzpatrick Plaintiffs. By way of background, the Fitzpatrick Plaintiffs are supposed to receive Profits Interests funneled from pools of real estate assets through a waterfall of entities called Chelseas, Murray Hills, and Tribecas. (First Amended Complaint ("FAC"), ¶¶ 169-185.) This is done for the purpose of ensuring that the Fitzpatrick Plaintiffs receive capital gains tax treatment. (FAC, ¶¶ 169-70.) The Chelseas are members of the entities that own the profit-generating assets (in the case of Direct Investments only[10]) and are entitled to Profits Interests from that entity. In the case of Direct Investments, the Murray Hills are members of the Chelseas and entitled to Profits Interests distributions from the Chelseas. In the case of Fund Investments, the Murray Hills are members of the investment funds and entitled to Profits Interests distributions from the funds. The Tribecas are at the bottom of the waterfall. They are members of, and entitled to distribution of Profits Interests from, the Murray Hills. The

---

[9]     *See Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 269 (S.D.N.Y. 2005) ("Disgorgement of profits is not an appropriate remedy for a breach of contract."); *Meyer Ventures, Inc. v. Barnak*, 1990 WL 172648, *5 (Del. Ch. 1990) (distinguishing "breach of contract measure of damages" from "a disgorgement measure which might apply to a disloyal fiduciary").

[10]     The Chelsea level does not exist for Fund Investments. (FAC, ¶¶ 181-183.)

Fitzpatrick Plaintiffs are members in the Tribecas (along with other current and/or former employees of AIGGRE), and entitled to distribution of Profits Interests from the Tribecas.  At each level of the waterfall, Defendants or entities controlled by them are responsible for approval and distribution of Profits Interests to the entities' members. (FAC, ¶¶ 177-78, 249-51).

Plaintiffs filed this suit because Defendants stopped distributing Profits Interests through the waterfall in violation of their legal obligations. (FAC, ¶ 124.) To ensure that Defendants could not avoid payment of Profits Interests to the Fitzpatrick Plaintiffs by claiming the funds had not been distributed down to the Tribeca level (and therefore that there are no funds for the Fitzpatrick Plaintiffs to receive), the Fitzpatrick Plaintiffs filed derivative actions (in addition to their direct individual actions) to compel the distribution of funds down the waterfall.[11] The derivative claims were asserted for one purpose and one purpose alone – to act as a legal "straw" to suck the Profits Interests down through the various entities to the Tribeca level so that they are available for ultimate distribution to the Fitzpatrick Plaintiffs. (Petrella Dec., ¶ 7-13.)[12]

Thus, through the derivative actions, the Chelseas (in the case of Direct Investments) and the Murray Hills (in the case of Fund Investments) seek to recover as damages the Profits Interests that Defendants should have distributed to them from the entities that own the real estate assets; the Murray Hills (in the case of Direct Investments) seek to recover as damages the

---

[11]     As Defendants have argued, this process should be "automatic," as should be any contractual performance in an ideal world. However, the reality is that Defendants have refused to perform, and Plaintiffs must proceed based on the assumption that Defendants will do everything in their power to avoid payment of the Profits Interests they have deliberately withheld. (Petrella Dec., ¶ 11.)

[12]     The Fitzpatrick Plaintiffs have attempted to achieve the same result through direct claims based on a third-party beneficiary theory.  (FAC, ¶¶ 263-272.) However, Plaintiffs have no guarantee that Defendants will not challenge that theory, or that the theory will prevail. In a stark illustration of Defendants' gamesmanship with respect to Section 8.9, Plaintiffs have offered to withdraw the derivative claims entirely as long as Defendants stipulate that they will ensure the distribution through the waterfall of any Profits Interests to which the Fitzpatrick Plaintiffs are adjudicated to be entitled. This offer, of course, proved that the derivative actions were brought solely to guarantee monetary recovery, not to recover Profits Interests for Tribeca members other than the Fitzpatrick Plaintiffs. Predictably, however, Defendants refused the offer and (yet again) demanded a stay of discovery. (Petrella Dec., ¶ 12.)

Profits Interests that the Defendants should have distributed to them from the Chelseas; and the Tribecas seek to recover as damages the Profits Interests that the Defendants should have distributed to them from the Murray Hills. (Petrella Dec., ¶¶ 7-10.)[13] Once the funds reach the Tribeca level, the Fitzpatrick Plaintiffs' direct claims kick in and seek recovery of the Profits Interests to which they (and they alone) are entitled as members of the Tribecas.  Thus, the derivative claims are adjuncts (albeit essential adjuncts) to ensure recovery on the Fitzpatrick Plaintiffs' direct claims.[14]

Defendants' strained contention that the derivative claims violate Section 8.9 by seeking Profits Interests for persons or entities other than the Fitzpatrick Plaintiffs is as bizarre as it is false.[15] *First*, to the extent that Defendants contend that suing on behalf of the Chelseas, Murray Hills, Sohos, and Tribecas to recover the Profits Interests due those entities violates Section 8.9, they are incorrect.  Section 8.9 merely prohibits ***Tribeca*** "Members" from suing the Tribeca or its affiliates under certain circumstances. (AIG MOL, at 9; Gordon Dec., Ex. C, at § 8.9.) But the derivative claims are brought by the Chelsea, Murray Hill, Tribeca, and Soho entities – ***none of***

---

[13]    Defendants' motion does not assert that this is an improper use of the derivative suit procedure, and indeed Defendants' integration clause argument (AIG MOL, at 11-12) virtually compels the Fitzpatrick Plaintiffs to sue derivatively because it asserts that they can recover Profits Interests only through the Tribeca structure.

[14]    For that reason, and given that the entire Tribeca structure was devised for the purpose of delivering Profits Interests to the Fitzpatrick Plaintiffs on a tax-advantaged basis (FAC, ¶¶ 169-70), the distinction between direct and derivative claims in this case may be academic. *See, e.g.*, *In re Cencom Cable Income Partners, Inc.*, 2000 WL 130629, *3 (Del. Ch. Ct. Jan. 27, 2000) (characterizing as direct, not derivative, limited partners' claim that general partner failed to pay them priority cash distribution pursuant to limited partnership agreement, noting: "[i]n the partnership context, the relationships among the parties may be so simple and the circumstances so clear-cut that the distinction between direct and derivative claims becomes irrelevant.") If that is the Court's conclusion, then there never were any true derivative claims and Defendants' Section 8.9 argument fails. Plaintiffs are, frankly, indifferent as to whether their derivative claims are characterized as such, so long as Defendants cannot avoid payment of the Fitzpatrick Plaintiffs' Profits Interests on the grounds that the funds have not been distributed down the waterfall.

[15]    Defendants' conclusory, unsupported pronouncement that Section 8.9 "of course" bars derivative actions is baseless. (AIG MOL, at 10.)  Section 8.9 does not even *mention* derivative actions, and Section 4.3(e) of the Tribeca SA clearly contemplates derivative suits.  (Declaration of Keara M. Gordon, dated March 29, 2010 ("Gordon Dec."), Exhibit C, at Sections 4.3(e), 8.9.)

**which are "Members" of the Tribeca entities**. Accordingly, Section 8.9 is, on its face, inapplicable to the derivative claims.[16] Similarly, because (as noted above) the derivative claims are merely a mechanism to ensure the collection of the Fitzpatrick Plaintiffs' Profits Interests, they are expressly permitted by Section 8.9 because they "aris[e] out of," "relat[e] to," and are "in any way connected with" the non-payment of the Fitzpatrick Plaintiffs' Profits Interests. (Gordon Dec., Ex. C, at § 8.9.)

*Second*, to the extent that Defendants claim that the derivative claims are a means to recover Profits Interests for Tribeca members (*i.e.*, AIG employees) other than the Fitzpatrick Plaintiffs, the argument is nonsensical. Any claim by any Tribeca member (including the Fitzpatrick Plaintiffs) to recover Profits Interests out of the Tribeca is, by definition, not a derivative action at all because it seeks no benefit for the Tribeca. It is, rather, a direct claim owned by each of the Tribeca members individually (which the Fitzpatrick Plaintiffs have asserted on their own behalf and which they obviously lack standing[17] to assert for anyone else). *See Cencom*, *supra*, 2000 WL 130629, *3 (characterizing as direct, not derivative, limited partners' claim that general partner failed to pay them priority cash distribution pursuant to limited partnership agreement). Therefore, it is literally impossible for the derivative claims to violate Section 8.9 by resulting in the recovery of Profits Interests by Tribeca members other than the Fitzpatrick Plaintiffs.

---

[16] From a legal standpoint, the derivative actions are obviously brought by the Chelseas, Murray Hills, Tribecas, and Sohos – not the Fitzpatrick Plaintiffs. *In re Ambac Fin. Group, Inc. Derivative Litig.*, 257 F.R.D. 390, 393 (S.D.N.Y. 2009) ("The true party in interest in a derivative action . . . is the corporation"); *Kaplan v. Bennett*, 465 F. Supp. 555, 560 (S.D.N.Y. 1979) ("A derivative action represents prosecution of a claim belonging not to the individual shareholder but to the corporation on whose behalf suit is brought") (citing *Ross v. Bernhard*, 396 U.S. 531 (1970)). *See also* William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5908 ("In the shareholders' derivative action, the right of the plaintiff to maintain the action is derivative or secondary. The corporation is not merely a formal party, but is an indispensable party to the action. The shareholder, as a nominal party, has no right, title or interest in the claim itself.")

[17] *See E.W. Smith Publ'g Co., Inc. v. Town of New Windsor*, 386 F. Supp. 2d 374, 377 (S.D.N.Y. 2005) ("To have standing, a party must allege . . . a violation of his or her own, not a third-party's, rights . . . .")

In addition, even if the Fitzpatrick Plaintiffs *were* attempting to recover Profits Interests for other Tribeca members (which they are ***not***), there would be no breach of Section 8.9. That is because all of the other Tribeca members have apparently either been paid, waived their rights to recover Profits Interests, or retained separate counsel to pursue their own Profits Interests. (Petrella Dec., Ex. D, T16:22-T17:2; T19:9-13; T20:10-18.) Consequently, according to Defendants, there simply are no Profits Interests to recover for any Tribeca members other than the Fitzpatrick Plaintiffs.

Finally, even assuming *arguendo* that the Complaint seeks to recover Profits Interests for Tribeca members other than the Fitzpatrick Plaintiffs (which it does ***not***), Defendants' Section 8.9 argument still fails. Section 8.9 broadly permits any suit "arising out of or related to or in any way connected with" non-payment of a Tribeca member's Profits Interests. Specifically, Section 8.9 begins by prohibiting any suits by Tribeca members against Tribeca affiliates that "aris[e] out of," "relate[] to," or are "in any way connected with" the member's membership. (Gordon Dec., Ex. C, at Section 8.9.)  It then carves out an exception beginning with the phrase "other than." (*Id.*)  The use of the phrase "other than," read in context, has no meaning except as defined by reference to the earlier phrase "claim arising out of or related to or in any way connected with such Member's [membership]," and therefore "other than" clearly depends on and refers back to that phrase. Consequently, the carve-out exception in Section 8.9 plainly permits any suit that "aris[es] out of or relate[s] to or [is] in any way connected with" the a member's failure to receive Profits Interests.[18]

Under the law, the terms "arising out of," "related to," and "in any way connected with" are construed extremely broadly.[19] Accordingly, to pass muster under Section 8.9, the only

---

[18]     At a minimum, any ambiguity concerning Section 8.9 is an issue of fact that cannot be resolved on a motion to dismiss. *Cephalon, Inc. v. John Hopkins University*, Civ. No. 3505-VCP, 2009 WL 4896227, *8 (Del. Ch. Dec. 18, 2009) ("If a contract's language is ambiguous, extrinsic evidence should be admitted and considered, and the interpretation of the ambiguity becomes an issue for the trier of fact.").

[19]     *See generally Nycal Corp. v. Inoco PLC*, 166 F.3d 1201, 1998 WL 870192, **2-3 (2d Cir. Dec. 9, 1998) (canvassing New York contract law concerning interpretation of phrases

question is whether the instant suit has any relationship whatsoever to the non-payment of the Fitzpatrick Plaintiffs' Profits Interests. Clearly, it does. That being the case, Section 8.9 does not prohibit the suit, regardless of whether it *also* seeks (directly or indirectly, intentionally or unintentionally) Profits Interests for other Tribeca members. Stated differently, the plain language of Section 8.9 bars only (a) suits by Tribeca members unrelated to non-payment of Profits Interests; and (arguably) (b) suits by Tribeca members that seek *only* to recover Profits Interests for other members and do not attempt to recover the suing member's own Profits Interests. The provision does *not* preclude any action that seeks or would result in the distribution of Profits Interests to Tribeca members other than the suing Tribeca member, ***as long as the Tribeca member bringing suit also seeks its own Profits Interests***; in that instance the suit clearly "aris[es] out of," "relat[es] to," and is "in any way connected with" the non-payment of the suing member's Profits Interests.

      **B.**      **Plaintiffs Have Standing to Assert The Derivative Claims.**

Defendants cite the Delaware derivative statutes for the proposition that the Fitzpatrick Plaintiffs must be members at the time of the relevant transactions to have standing. (AIG MOL, at 12.) However, it is undisputed that the Fitzpatrick Plaintiffs not only were members of the relevant entities at the time of the relevant transactions, but also continue to be members to this day. Although the Fitzpatrick Plaintiffs became "inactive members" pursuant to the terms of the Tribeca SA upon the cessation of Mr. Fitzpatrick's employment, an "inactive member" is still a

---

"arising out of," "relating to," and "in connection with"). *See also Northfield Ins. Co. v. Derma Clinic, Inc.*, 440 F.3d 86, 94 (2d Cir. 2006) (term "arising out of" is generally construed broadly"); *Jerulee Co. v. Sanchez*, 841 N.Y.S.2d 242, 244 (1st Dep't 2007) ("In various contexts, the phrase 'arising out of' has been given a broad construction") (collecting cases); *United States v. Bradford*, 433 F. Supp. 2d 1001, 1003 (N.D. Iowa 2006) ("In the federal common law of contracts, 'arising from' is a broad contractual phrase that encompasses almost any causal connection or relationship").

member,[20] and nothing in the Delaware statutes states or implies that an "inactive member" as defined by an operating or limited partnership agreement lacks standing to sue derivatively.[21]

Next, Section 8.1 of the Tribeca Agreements (which Defendants quote for the proposition that Plaintiffs may not bring derivative claims) provides:

> Whenever the act, vote, consent or decision of the Members is required or permitted **pursuant to this Agreement** an Inactive Member shall not be entitled to perform such act, to participate in such vote or consent, or to make such decision . . . .

Thus, Section 8.1 only prohibits Inactive Members from taking an "act, vote, consent, or decision" required or permitted **by the Tribeca Agreement**. Section 8.1 does not prohibit (or even purport to prohibit) Inactive Members from performing acts or exercising rights independently permitted by law. And Delaware law grants members and limited partners in limited liability companies and limited partnerships the right to bring derivative actions. 6 Del. C. § 17-1001; 6 Del. C. § 18-1001. Because Tribeca members' rights to bring derivative actions derive from Delaware statutory law and not the provisions of the Tribeca Agreements, Section 8.1 does not apply to members' rights to bring derivative actions.

Moreover, no provisions in the Tribeca Agreements limit members' rights to bring derivative actions. Indeed, Section 4.3(e) – the only provision of the Tribeca Agreements referencing derivative suits – clearly contemplates derivative suits by the Tribeca. (See Gordon Dec., Ex. C, at § 4.3(e) (providing that the Tribeca may participate in defense of actions "brought against a Covered Person (other than a derivative suit in right of the [Tribeca]).").

---

[20]   The *Kelly* decision cited by Defendants is obviously distinguishable because that case involved a former LLC member, not (as here) an existing (albeit "inactive") member.
[21]   The "inactive member" designation in the Tribeca SA is meaningless in any event because even *active* Tribeca members have no right to vote or otherwise act, and no say in the operation or management of the entity.   Rather, the Managing Member (formerly Mr. Fitzpatrick, now affiliates of Defendants) had authority over the operation of the entity, subject to certain limitations and oversight by AIG.  (*See* Gordon Dec., Ex. C.)

C.      **The Tribeca "Integration Clause" Does Not Affect Plaintiffs' Claims Pursuant To The 2001 Contract.**

Section 11.1 of the Tribeca Agreements provides (in the portion of the provision omitted by Defendants):

> It is understood that this Agreement ***does not relate to, or supersede any other obligation*** with respect to (a) profits interests in other types of investments, including interests in investments held by the [fund or investment vehicle relevant to that Tribeca] that are not Investments held by the [Tribeca], direct investments in other real estate product classes or investments in real estate funds or other collective investment vehicles, or (b) co-investment rights in any investments, including direct investments in real estate investments or real estate funds or other collective investment vehicles.

Thus, even assuming *arguendo* the validity of Defendants' position, the "integration clause" of Section 11.1 of the Tribeca Agreements applies only to the specific investment interests held by each particular Tribeca. No provision in any of the Tribeca Agreements supersedes any agreement (including the 2001 Contract) with regard to Mr. Fitzpatrick's interest in investments not held by Tribecas. Thus, Defendants concede that Mr. Fitzpatrick has valid claims under the Tribeca Agreements for investments held by those entities, and Section 11.1 clearly provides that claims regarding investments not held by Tribecas of which Mr. Fitzpatrick is a member (including claims regarding AIG's failure to form Tribecas) are properly brought pursuant to the 2001 Contract.

D.      **Cayman Islands Exempted Limited Partnership Law Does Not Prohibit Derivative Actions.**

Defendants' Motion to Dismiss grossly misstates the law regarding derivative claims on behalf of exempted limited partnerships formed under the laws of the Cayman Islands. As AIG has acknowledged, the Tribecas organized under the laws of the Cayman Islands are exempted limited partnerships. (See FAC ¶¶ 6-8, 26, 28, 30, 32, 41, 47-50; AIG Ans. (dated March 29, 2010), ¶¶ 6-8, 26, 28, 30, 32, 41, 47-50). The Cayman Islands Exempted Limited Partnership Law provides, in Section 13(2): "A limited partner may bring an action on behalf of an exempted limited partnership if any or more of the general partners with authority to do so have, without good cause, refused to institute such proceedings."   *See* Exempted Limited Partnership Law

(2007 Revision), G14/2007 § 1 (Cayman Islands). *See also* Exempted Limited Partnership (Amendment Law), G10/2009 § 5 (Cayman Islands) at 5(a)(iii)(ec) (providing that by bringing action pursuant to Section 13(2) limited partner does not take part in conduct of business of exempted limited partnership).[22] Thus, derivative actions on behalf of exempted limited partnerships are not barred under Cayman Islands law and Defendants' argument fails.

> **E.   Plaintiffs Have Satisfied the Pleading Requirements for Their Derivative Claims.**

Under Delaware law, members of limited liability companies and limited partners may bring a derivative suit on behalf of the limited partnership or limited liability company where "managers or members with authority to do so have refused to bring the action or if an effort to cause those managers or members to bring the action is not likely to succeed." 6 Del. C. § 17-1001 (limited partnerships); 6 Del. C. § 18-1001 (limited liability companies). Plaintiffs have alleged overwhelming facts establishing that any demand that the current management of the Tribeca, Soho, Chelsea, and Murray Hill entities pursue this litigation would not succeed. (FAC, ¶¶ 249-262.)

In the case of a limited liability company or limited partnership with a corporate general partner or managing member, a member or limited partner is required to demonstrate demand futility only with regard to the corporate general partner/managing member itself – and not with regard to the corporation's board of directors or any other organizational subcomponent. *Gotham v. Hallwood Realty Partners L.P.*, 1998 WL 832631, at *5 (Del. Ch. Nov. 10, 1998). In *Gotham*, the Delaware Chancery Court stated that "there is nothing in DRULPA that even hints at [the defendant's] proposition that [the defendant's] board of directors is the organizational

---

[22]   The authorities cited by Defendants (AIG MOL, at 17, n. 8.) address the treatment of derivative shareholder suits brought on behalf of corporations, *not* the treatment of derivative suits brought on behalf of exempted limited partnerships under Cayman Islands law. Moreover, even the inapplicable authorities cited by Defendants provide that even corporate shareholder derivative suits are permitted under Cayman Islands law under certain circumstances. *See Feiner Family Trust v. VBI Corp.*, No. 07-CV-1914 (RPP), 2007 WL 2615448, *5 (S.D.N.Y. Sept. 11, 2007).

subcomponent to which [plaintiff's] demand should be made. Limited partnership cases dealing with demand against a corporate general partner discuss demand in relation to the corporation itself, not its internal decisionmaking apparatus." *Id.* The court then concluded that plaintiff was required to plead futility of a pre-suit demand to the corporate general partner as an entity. *Id.*

In the First Amended Complaint, Plaintiffs allege that AIGGRE is the managing member or general partner of the Chelseas and Murray Hills (FAC, ¶¶ 177-78, 182). Plaintiffs also allege that AIG Soho GP LLC and AIG Tribeca GP LLC (entities entirely controlled by AIG and/or AIGGRE), or other entities entirely controlled by AIG and/or AIGGRE, are the current general partners or managing members of the Tribecas and Sohos. (FAC, ¶ 251.)  Plaintiffs allege at length and with particularity that AIG and AIGGRE have abused their positions as the managing members or general partners (and their control over the managing members or general partners) of the Tribeca, Murray Hill, and Chelsea entities, in order to benefit AIG and AIGGRE at the expense of the Tribeca, Murray Hill, Soho and Chelsea entities. (*See, e.g.,* FAC, ¶¶ 249-62.)

Plaintiffs also allege that Defendants sought to force out Mr. Fitzpatrick in order to gain greater control over the Tribecas' assets, finally resorting to concocting a baseless "for Cause" termination of Mr. Fitzpatrick's employment (and thus removing him as the general partner or managing member of the Tribecas and Sohos) on May 12, 2009. (*See, e.g.,* FAC ¶¶ 238, 249). Plaintiffs allege that Defendants have improperly benefited from their acts, reaping millions of dollars that would have otherwise been payable to Plaintiffs. (FAC ¶ 262.)  AIGGRE (as managing member of the Chelsea and Murray Hill entities) and AIG and/or AIGGRE (as the controlling entities of AIG Soho GP LLC, AIG Tribeca GP LLC, and/or any other entities that have been installed as the managing members of the Tribeca or Soho entities), and AIG Soho GP LLC and AIG Tribeca GP LLC (as entities controlled by AIG and/or AIGGRE) have serious conflicts of interest implicating their duty of loyalty to the limited partners of the Tribeca, Soho, Murray Hill, and Chelsea entities. As alleged in the First Amended Complaint, any demand on the general partners or managing members would be futile because those entities are clearly motivated by an interest in enriching themselves (or AIG and/or AIGGRE) at the expense of the

Tribecas and other limited partners, in violation of contractual and fiduciary obligations. *See, e.g., Gotham*, 1998 WL 832631 at *6 (demand futility requirement met where plaintiff pled general partner was interested in entrenching itself and enriching itself at expense of limited partners).

## III. ALTERNATIVELY, PLAINTIFFS ARE ENTITLED TO AMEND THE COMPLAINT.

As stated in Point II, *supra*, all of Defendants' arguments in support of their motion to dismiss fail. However, in the unlikely event that the Court accepts any of those arguments – particularly those in Points II.B and II.C concerning Section 8.9, the integration clause, and the standing issue – Plaintiffs have been deprived of the opportunity that this Court affords all litigants to amend their pleadings in response to purported deficiencies identified by their adversaries in pre-motion proceedings.

Specifically, Defendants never raised the arguments contained in Points II.B and II.C of the memorandum of law they filed in support of their instant motion at any time before or during the pre-motion conference pursuant to this Court's Individual Practice 2.A. (Petrella Dec., ¶¶ 18-24.) Plaintiffs believe (for example) that with a few simple modifications they can easily clarify any aspects of the First Amended Complaint that Defendants might erroneously misread to seek recovery of Profits Interests for Tribeca members other than the Fitzpatrick Plaintiffs. (*Id*.) Had Defendants followed this Court's rules and provided the notice required by Individual Practice 2.A, Plaintiffs would have been able to address such issues in their prior amendment, and thus avoid this needless and wasteful motion practice. Thus, Plaintiffs are entitled to amend to cure any deficiencies identified by the Court.[23]

---

[23]     *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) ("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course"); *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198-99 (2d Cir. 1990) (holding that district court abused discretion in denying leave to amend complaint, without giving reason, where plaintiff had requested such leave in supplemental opposition memorandum and it was unclear whether amendment would have been futile: "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint.")

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' partial motion to dismiss in its entirety and grant Plaintiffs' motion to dismiss the First Amended Counterclaims in its entirety.

Dated:      New York, New York
            May 4, 2010

/s/ Michael E. Petrella
Sean F. O'Shea
Michael E. Petrella
**O'SHEA PARTNERS LLP**
521 Fifth Avenue, 25th Floor
New York, New York  10175
Tel:    (212) 682-4426
Fax:   (212) 682-4437

*Attorneys for Plaintiffs*