UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
KEVIN FITZPATRICK, et al.,              :

             Plaintiffs,              :          **ORDER**

        -against-              :          **10 Civ. 0142 (MHD)**

AMERICAN INTERNATIONAL GROUP, INC.,:
et al.,

                        :
            Defendants.
------------------------------------x
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:


Plaintiffs have applied by letter for an order precluding defendants (1) from introducing at trial a partially-redacted May 26, 2004 report prepared by AIG's Deputy General Counsel Jeffrey J. Hurd and (2) from calling as a trial witness a former AIG officer, Gary Kleinman. They premise this application on the assertions that defendants failed to timely produce the document in question and that their designation of Mr. Kleinman as a potential witness was also untimely. Defendants oppose both aspects of the plaintiff's application.

Background

The Hurd memorandum was addressed to Marshall A. Cohen, the Chairman of the AIG Compensation Committee, and was prepared to seek approval of what it referred to as a "Real Estate Co-Investment Program", apparently a reference to the so-called Soho investment program, under which certain key employees of the AIG Global Real Estate Investment Corporation ("AIGGRE") could invest in selected "AIGGRE sponsored real estate funds" and "AIGGRE managed investment programs". (Sept. 17, 2013 letter to the Court from Michael E. Petrella, Esq. ("Sept. 17 Petrella letter") Ex. 2 at 1). Copies of the memorandum were sent at that time to five other senior officials, including Mr. Fitzpatrick.[1] Subsequently, in 2006 Fitzpatrick filled out a questionnaire for AIG to use in preparing the 2006 shareholder proxy statement, and in responding to questions regarding his compensation from AIG, he attached a copy of the Hurd memorandum as a complete answer to those queries. (Sept. 24, 2013 letter to the Court from Jonathan Rosenberg, Esq. ("Sept. 24 Rosenberg letter") at Ex. B).

---

[1] The other recipients were Win Neuger, AIG's Chief Investment Officer; Ernest Patrikis, Senior Vice President and General Counsel to AIG; Richard D'Alessandri, then General Counsel of AIGGRE, and John Hornbostel, an in-house attorney in AIG's legal department.

During discovery in this case defendants produced a copy of the Hurd memorandum to plaintiffs' counsel, but then requested its return on the basis that it constituted a protected attorney-client communication. Plaintiffs did not contest this assertion and apparently returned the document. On September 6, 2013, however, defendants' counsel again produced a copy of the memorandum, with only one paragraph redacted because it contained legal advice. As for the balance of the document, counsel represented that a new review of it in preparation for trial -- now scheduled for November 4, 2013 -- had yielded the conclusion that the balance of the memorandum was not privileged. Defendants also offered to make Mr. Hurd available for a follow-up deposition, as he was the author of the document. Instead, plaintiffs have sought to preclude use of the memorandum.

As for Mr. Kleinman, he apparently worked directly for Fitzpatrick at AIGGRE and engaged in "clean-up" activities with respect to some of the properties at issue in this case. Defendants did not identify him as a potential trial witness in their original Rule 26(a)(1) disclosures dated March 1, 2010 or in their supplemental disclosure dated November 22, 2010. (See Sept. 30, 2013 letter to the Court from Michael E. Petrella, Esq. ("Sept. 30 Petrella letter") at Exs. 4 & 5). Defendants' counsel first

notified plaintiffs that they were considering calling Mr. Kleinman at trial in an e-mailed letter on August 29, 2013. (Sept. 17 Petrella letter at Ex. 4). In their notice, counsel represented that Kleinman would provide "[i]nformation on topics including AIG's facilities and facilities management, including facilities sales between 2001-2007 and certain U.S. facilities (e.g., 175 Water Street)." (Id.). On September 4, 2013 plaintiffs' counsel requested his deposition, but when defendants advised that he would be available on September 27, 2013 and not thereafter for several weeks, plaintiffs did not take the offered deposition and instead chose to seek preclusion. (Decl. of Edward N. Moss, Esq., dated Sept. 24, 2013 ("Moss Decl.") at ¶ 11).

## ANALYSIS

I. General Criteria

Rule 26(a)(1)(A) provides that, as part of initial disclosures, each party must identify with appropriate contact information "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). The same rule requires provision of a copy -- or description by category -- of

all documents . . . that the disclosing party has in its possession, custody or control and may use to support his claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Of course the disclosing party must also respond to discovery requests on a timely basis. In addition, Rule 26(e)(1)(A) requires that the disclosing party supplement its 26(a) disclosure or discovery response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ."

Plaintiff seeks preclusion based on the terms of Rule 37(c)(1), which specifies:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard,
>
> (A) may order payment of the reasonable expenses including attorney's fees, caused by the failure,
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

5

II. <u>Assessment</u>

We first address the status of the memorandum, and then turn to the question of whether Mr. Kleinman may testify.

In opposing use of the Hurd memorandum, plaintiffs invoke Rule 37(c)(1), arguing that defendants inexcusably failed to produce the document during the discovery period and instead delayed its release until only a few months before trial, causing plaintiffs harm since they were effectively denied the ability to question five witnesses -- including Mr. Hurd -- about the substance of the document in deposition. Thus they argue that the delay was not substantially justified and was not "harmless". Defendants, in contrast, seek to use either the memorandum separately or the questionnaire with the version of the memorandum that Fitzpatrick attached, based on the contention that the timing of their release of the document to plaintiffs was harmless. Alternatively, even if the court declines to allow its use in their case in chief, they ask leave to use it for impeachment of Mr. Fitzpatrick, presumably if he opens the door in his testimony.

There is no real dispute that defendants failed to comply with their discovery obligations in withdrawing from plaintiffs a

document that they now concede is highly relevant and -- with one minor exception -- not privileged.[2] Rather, defendants invoke harmlessness and, more persuasively, argue that the court's discretion not to enforce preclusion under Rule 37(c) should be exercised in this case in view of the potential importance of the evidence, the limited harm imposed on plaintiffs by the awkward timing of production, and the absence of any bad faith on defendants' part in originally invoking privilege for the memorandum.

The wording of Rule 37(c) could be read as requiring preclusion or other sanction in cases in which a defendant fails, without substantial justification, to comply with its discovery obligations in a manner that prejudices its adversary. That said, the Second Circuit has made clear that the court has some discretion, including the imposition of lesser sanctions, even if the disclosing party fails to satisfy the requirements of Rule 37(c). See, e.g., Design Strategy, Inc. v. Davis, 469 F.3d 284,

---

[2] Since defendants initially produced the memorandum in discovery and then asked for its return, we infer that there is no dispute that plaintiffs' document requests encompassed its production. Hence, even if defendants were not required to list it in their Rule 26(a) disclosure -- and obviously defendants were authorized simply to list categories of documents in this massively document-heavy case -- they were obligated to produce it.

296-98 (2d Cir. 2006) (citing cases). The pertinent considerations include "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the . . . precluded [evidence]; (3) the prejudice suffered by the opposing party as a result of having to meet new [evidence]; and (4) the possibility of a continuance." Id. at 296 (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)) (second and third brackets added).

In this case defendants explain their handling of the document by noting that they first produced it and then erred in judging that it was entirely privileged, triggering their request for its return, a request in which plaintiffs acquiesced. As for the timing of the more recent production, counsel note that they had started preparing for trial and apparently re-reviewed the document, determining -- seemingly quite reasonably -- that it was almost entirely not privileged. We further infer the obvious, that defendants also judged that the memorandum was favorable to their position as to the scope of the universe of assets potentially subject to profit sharing.

Insofar as bad faith is a relevant consideration, see id. at 296 ("although a 'bad faith' violation is not required in order to

8

exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply."), we conclude that defendants' explanation suffices to demonstrate that they acted in good faith in this respect. Although plaintiffs invoke previous discovery derelictions by defendants as evidencing that their adversaries are deliberately seeking to evade their discovery obligations and impermissibly disadvantage plaintiffs, we find this assertion unpersuasive. Indeed, since the document is arguably favorable to defendants, if they were inclined to engage in such misconduct, they would presumably not have produced it in the first place, and would have instead waited for the eve of trial to do so. Alternatively, since the document is arguably favorable to them, a more natural self-interested approach would have been to produce it timely and not withdraw it, since that withdrawal undercut their ability to use it later at trial.

Aside from referring to prior discovery difficulties, plaintiffs contend, in pressing their argument about bad faith, that the document is in fact entirely privileged and that hence the defendants' recent decision to hand it over to plaintiffs is intended to sneak into the trial record a document that should not have been produced in the first place. The short answer is that our review of the document and its provenance convinces us that the

memorandum (except potentially for one short redaction) is not privileged.[3]


As for harm to plaintiffs, the pertinent facts are rather unique and suggest that any such potential harm is quite limited. This memorandum is not a new document to Fitzpatrick. Rather, it was sent to him on a "cc" basis at the time that it was issued, plainly in view of the fact that its contents intimately concerned him, and he obviously retained a copy. Indeed, two years later he attached a copy of the document to the AIG questionnaire that he filled out and in effect proffered it as an apparently complete answer to two questions concerning his compensation from AIG. In short, he was familiar with its contents and apparently agreed with them as accurately reflecting a portion of what he was entitled to from AIG.[4] Given this fact and the potential for reading it in a

---

[3] Plaintiffs also engage in speculation that if defendants are permitted to use this document, they might unleash a wave of hitherto withheld documents, entirely obliterating the significance of court-imposed discovery deadlines. (Sept. 30 Petrella letter at 11). Defendants' counsel have represented, however, that they will not seek to re-designate any other documents on their lengthy privilege list (Sept. 17 Petrella letter at Ex. 3), and we will hold them to their representation.

[4] Plaintiffs' counsel makes no representation as to whether Fitzpatrick in fact retained a copy of the memorandum from his time working at AIG. In the absence of any information on this point, we refrain from addressing it.

manner favorable to defendants in this case, it is perhaps not surprising that his attorneys chose not to contest defendants' original invocation of privilege to recover it even though its status as a privileged document was open to substantial question.

The particular harm that plaintiffs cite is that production of the document as of early September denied them the ability to question pertinent deposition witnesses about its contents. They mention not only the author, Mr. Hurd, but also all of the individuals who were copied on the memorandum, that is, Messrs. Neuger, Patrikis, D'Alessandri, and Hornbostel. That said, they do not explain their decision to decline to depose Mr. Hurd, even though his testimony was available to them in September.

We view plaintiffs' claim of harm as substantially overstated although not entirely illusory. They have extensively deposed Messrs. Neuger and D'Alessandri concerning the profit-sharing arrangements with plaintiffs, and any follow-up examination of them about this document would plainly require only a brief session. As for Patrikis, they suggest no involvement by him in the negotiation of Fitzpatrick's arrangement; indeed, they apparently did not even take his deposition despite his position as AIG general counsel. With regard to Hornbostel, he was actually involved in the

negotiation and drafting of the documents necessary to create the profit-sharing program (see Sept. 24 Rosenberg letter at Exs. F & G), and yet plaintiffs chose not to depose him either. Given those decisions, there is no reason to believe that, if the Hurd memorandum had been produced and not withdrawn during early discovery, plaintiffs would have pursued questions of those witnesses about this document merely because they received copies of it.

All of that said, the obvious need to ask Hurd about the memorandum and the arguable reason to query Neuger and perhaps D"Alessandri about it amounts to a modest additional burden during a presumably busy time, although the fact that we are now in early October should not obscure the fact that plaintiffs had a month to take the proffered deposition of Hurd and, if deemed desirable, to seek the other witnesses for some follow-up questions. We view this added burden as sufficient, notwithstanding the unusual circumstances of the document's provenance and handling, to create some very limited "harm" within the meaning of Rule 37(c).

As for the remaining factors, the document seems potentially significant not only for what it says, which may be somewhat supportive of defendants' view regarding the scope of the profit-

sharing program, but also (1) because it reflects the contemporaneous views of senior-level corporate decision makers and (2) because Fitzpatrick arguably adopted its description as so accurate as to foreclose the need to add or modify its terms when preparing his answers to the AIG questionnaire. Finally, we note that if plaintiffs believed that a brief continuance were warranted to undertake the needed discovery -- although we see no compelling reason to alter the current trial schedule -- they would be free to ask for one.[5]

As has been noted, even absent strict compliance by the disclosing party with Rule 26, the imposition of preclusion is not mandatory but rather is within the discretion of the trial court, and has been referred to as a "drastic remedy". E.g., Harkabi v. Sandisk Corp., 2012 WL 2574717, at *4 (S.D.N.Y. June 20, 2012); see, e.g., Plew v. Limited Brands, Inc., 2012 WL 379933, at *6 (S.D.N.Y. Feb. 6, 2012); see also Schiler v. City of New York, 2008 WL 4525341, at *3 (S.D.N.Y. Oct. 9, 2008) (citing Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988)).[6] In this case, based

---

[5] We note that the current trial schedule was strongly endorsed by plaintiffs at the July 23, 2013 conference when it was decided upon.

[6] We note that some courts have stated that preclusion may depend on proof of bad faith by the disclosing party, see Plew,

13

on (1) the absence of bad faith by defendants, (2) the unusual circumstances that reflect Fitzpatrick's knowledge of the document and his attorney's apparent decision not to challenge the privilege designation when he had the document in hand during discovery, (3) the potential significance of the memorandum (including Fitzpatrick's arguable adoption of its terms) and (4) the very limited burden imposed on plaintiffs by its production on September 6, 2013, we decline to preclude its use at trial, albeit subject to certain conditions. Specifically, plaintiff is to be permitted to depose Mr. Hurd on the topic of the memorandum and any discussions of it in which he participated with senior management of AIG. That deposition is not to exceed two hours. In addition, plaintiffs are to be afforded an opportunity to question Messrs. Neuger and D'Allesandri on the same topic for no more than one hour each. These depositions are to be conducted by no later than October 25, 2013.

---

2012 WL 379933, at *6 (quoting Johnson Elect. North America, Inc. v. Mabuchi Motor America Corp., 77 F. Supp.2d 446, 458 (S.D.N.Y. 1999)), a rule that the Second Circuit has rejected. See Design Strategy, Inc., 469 F.3d at 296. Nonetheless, the circuit court there noted that bad faith or its absence may be taken into account in determining how to exercise the court's recognized discretion. Id..

14

As for Mr. Kleinman, his potential use as a witness was reported by defendants at the end of August 2013, and he was offered  on September 16, 2013 for deposition on September 27, 2013. (Moss Decl. ¶ 11 & Ex. J). Although plaintiffs' counsel initially requested his deposition, once the date was communicated to them, they failed to pursue it and they offer no clear explanation, much less justification, for that decision. Applying the same standards under Rules 26 and 37(c), we conclude that the timing of defendants' notice was not reflective of bad faith and did not cause plaintiffs meaningful harm, since defendants offered to make him available for deposition in September. Accordingly, defendants may call him at trial, subject to his being made available for deposition on the cited topics by no later that October 25, 2013. Moreover, by no later than October 14, 2013 defendants are to proffer a more detailed description of what his testimony may entail so as to assist plaintiffs' counsel's preparation for the deposition.

## CONCLUSION

For the reason stated, plaintiffs' applications to preclude the use of the Hurd May 26, 2004 memorandum and to preclude defendants from calling Gary Kleinman as a trial witness are

15

denied, subject to the conditions specified.


Dated:  New York, New York
        October 8, 2013



_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE



Copies of the foregoing Order have been sent today to:

Michael Petrella, Esq.
Fax: (212)682-4437

Jonathan Rosenberg, Esq.
Fax: (212) 326-2061